IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEANNA WEIDNER,

                          Plaintiff,

          v.

UNITY HEALTH PLANS INSURANCE CORPORATION,
a Wisconsin Corporation,

                          Defendant.

OPINION AND ORDER

08-cv-404-slc

---

In this civil action for declaratory, monetary and injunctive relief, plaintiff Deanna Weidner contends that her former employer, defendant Unity Health Plans Insurance Corporation, violated her rights under the Family and Medical Leave Act, 29 U.S.C. §§ 2611-2654, when it refused to reinstate her to her former position or its equivalent when she returned from a five-and-a-half month medical leave of absence in March 2007. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. The parties have consented to my jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

Defendant has moved for summary judgment on the ground that plaintiff was neither entitled to nor eligible for FMLA protection at the time of the adverse job action. In addition, it seeks summary judgment on its counterclaim to recover $2,900.49 in gross wages that it mistakenly paid plaintiff in 2006 for hours that she did not work.

I am denying defendant's motion with respect to plaintiff's FMLA claim. First, on these facts, defendant is incorrect to contend that plaintiff was not entitled to FM LA leave in 2007 because she had used 12 weeks of FMLA leave in 2006. Second, there is a genuine (and un-estopped) factual dispute whether plaintiff performed enough service hours to meet the Act's minimum hours-of-service requirement. A jury will have to sort out the parties' competing assertions on this point.

Finally, I am granting defendant's motion with respect to its counterclaim for unjust enrichment, but only in part.  Plaintiff need not reimburse defendant for FICA deductions or monies paid for plaintiff's share of employment benefits.

From the parties' proposed findings of fact and the pleadings, I find the following facts to be undisputed for purposes of deciding the motion for summary judgment:

FACTS

Plaintiff Deanna Weidner is an adult who resides in Sauk City, Wisconsin.  Defendant Unity Health Plans Insurance Corporation is a health maintenance organization incorporated in Wisconsin with principal offices located in Sauk  City.

Plaintiff was employed by defendant from 1995 to March 19, 2007.  Beginning in June 2006, she held the title of Health Care Quality Specialist, which was a salaried position.  Because plaintiff was paid a salary, neither her time sheets nor defendant's payroll records recorded the number of hours she worked; they only recorded deductions such as paid time off and holiday pay.  According to those records, plaintiff worked 1,128 hours in 2006.

Under Unity's family leave policy, an employee who has been employed by Unity for at least 52 consecutive weeks and who has worked at least 1,000 hours prior to the leave is eligible for up to 12 weeks of leave per calendar year.  On September 21, 2006, plaintiff requested leave from work for medical reasons related to her pregnancy and the expected birth of her child, which was to occur around December 6, 2006.  Plaintiff estimated that she would be off work for approximately five and a half months, beginning October 2, 2006.

2

Unity's Human Resources Director, Karen Bender, met with plaintiff in September to discuss plaintiff's leave request. Bender informed plaintiff that of the 12 workweeks of leave to which she was entitled annually under the Family and Medical Leave Act ("FMLA"), she had only six weeks remaining in 2006 because she had used 30.5 days of FMLA leave earlier in the year. This meant that plaintiff's remaining FMLA leave would expire on November 10, 2006. Bender told plaintiff, however, that she could apply for short-term disability and, assuming she was still medically disabled in 2007, could reapply for FMLA leave in 2007. On plaintiff's leave application form, Bender wrote: "New eligibility [for FMLA] starts in 2007." Although Bender could not guarantee that plaintiff could have her job back when she returned from leave, she told plaintiff that defendant would provide her with comparable work.

Plaintiff commenced her leave on October 2, 2006. Her child was born on November 30, 2006. Plaintiff continued on pregnancy leave upon the recommendation of her physician. Unity hired a temporary employee to fill plaintiff's position while she was on leave.

On December 28, 2006, Bender sent a letter to plaintiff captioned "FMLA Eligibility." Bender wrote, in part:

> I wanted to follow-up with you on some of the things we discussed prior to your departure. As you know, you used six weeks of your 2006 FMLA entitlement prior to your maternity leave due to complications with your pregnancy. Therefore, you were entitled to another 6 weeks of FMLA leave in 2006. Since your most recent absence began on October 2, 2006, your final six weeks of FMLA eligibility ended on November 10. I had informed you of this at our meeting and via the Request Form
>
> I advised you that if you wanted FMLA in 2007, you would have to re-apply for it. Since you are continuing to collect [short term disability], I assume that you are going to want to continue on FMLA. Therefore, I am enclosing FMLA paperwork so that you

3

can re-certify in order to continue to remain off of work.  Please have your doctor complete this paperwork and return it to us within 15 days of your receipt of this letter.

In the first week of January 2007, plaintiff delivered an application for FMLA leave to Unity's Human Resources office.  Presumably this request was granted because neither party has presented evidence that it was denied.  On January 12, 2007, plaintiff, Bender and Unity's Director of Operations, Debra Schiffman, conferred by telephone and agreed that plaintiff would return to work from her leave on an 80 percent, part-time, salaried basis.  In a January 19, 2007 letter memorializing the discussion, Bender stated that "at this time, we plan to put you into the Healthcare Quality Specialist position."  Plaintiff's anticipated return-to-work date was February 23, 2007.

On February 8, 2007, plaintiff provided Bender with a form completed by her physician, releasing plaintiff from work for four weeks or until she was reevaluated on March 1, 2007 for sacroiliac pain.  Plaintiff requested FMLA recertification forms from Bender, but Bender told plaintiff that the work release form would be effective for FMLA leave recertification purposes.

On February 12, 2007, Bender telephoned plaintiff to inform her that defendant was rescinding its January 19, 2007 letter agreement because of "staffing changes."  However, defendant did not immediately fill plaintiff's job with a permanent replacement.

On March 1, 2007, plaintiff faxed a new work release form completed by her physician, recommending that she undergo a treatment procedure on March 14 that would prevent her from returning to work until March 19, 2007. On March 5, defendant decided to give plaintiff's job to the temporary employee who was filling it.

4

On March 13, 2007, Bender left a voice message on plaintiff's telephone stating that two positions would be available to her upon her return to work on March 19. Bender considered plaintiff to have been on FMLA leave from January 2007 until March 19, 2007. The pay rates for these position were below plaintiff's former salary. Plaintiff reported for work on March 19. Bender told plaintiff that the only positions defendant had available were the two positions she had described in her voice message. Plaintiff packed her belongings and left the workplace.

OPINION

## I. <u>Summary Judgment Standard</u>

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 322-23 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, in order to avoid summary judgment, the non-moving party must supply sufficient evidence for each essential element of its case to allow a reasonable jury to render a verdict in his favor. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 936 (7th Cir. 2007); *Sanchez v. Henderson*, 188 F.3d 740, 743 (7th Cir. 1999). The mere existence of some alleged factual dispute is insufficient to defeat a properly supported motion for summary judgment. *Liu v. T & H Machine, Inc.*, 191 F.3d 790, 796 (7th Cir. 1999).

## II.   The Family and Medical Leave Act

Congress enacted the Family and Medical Leave Act  in 1993 to balance "the demands of the workplace with the needs of families," among other purposes.  29 U.S.C. § 2611(b).  The Act is complemented by a host of administrative regulations promulgated by the Secretary of Labor pursuant to Congress's directive.  29 U.S.C. § 2654 (directing Secretary of Labor to promulgate regulations "necessary to carry out" the Act).  Under the FMLA, covered employers[1] must guarantee up to 12 weeks of unpaid leave in "any 12-month period" for eligible employees who are providing care for a newly born or adopted child or for a family member who has a serious health condition or because the employee has a serious health condition that disables her from performing the functions of her job.  29 U.S.C. § 2612.

An eligible employee is one who has been employed by the employer from whom leave is requested for at least 12 months and has worked at least 1,250 hours for that employer during the 12-month period preceding the leave.  § 2611(2)(A).  When an employee requests FMLA leave, the employer must notify the employee within five days of the request whether the employee is eligible for FMLA leave and if not, state the reasons for the ineligibility determination.  29 C.F.R. § 825.300(b) (2009).

Upon return from FMLA leave, employees are entitled to reinstatement to the same or an equivalent position without the loss of benefits, with some limited exceptions. 29 U.S.C. § 2614.  If an employee fails to return to work on or before the date that FMLA leave expires, the

---

[1] The parties do not dispute that defendant is a covered employer under § 2611.

right to reinstatement also expires. *See Brown v. Trans World Airlines*, 127 F.3d 337, 342-43 (4th Cir. 1997); *Beckendorf v. Schwegmann Giant Supermarkets, Inc.*, 134 F.3d 369 (5th Cir. 1997).

The Act makes it unlawful for an employer "to interfere with, restrain or deny the exercise of or the attempt to exercise" the rights guaranteed under the Act. 28 U.S.C. § 2615(a). An employer who violates this provision is liable for compensation and benefits lost by the employee "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement and promotion. § 2617(a)(1)(B).

### III.  2007 Entitlement

In this case, there is no dispute that plaintiff's rights associated with her 2006 FMLA leave expired when she did not return to work on November 10, 2006.  Plaintiff brings her FMLA claim on the basis of the second allotment of leave for which she was approved in 2007. Although the granting of this leave was consistent with defendant's policy of providing 12 weeks of leave per calendar year, defendant now argues that plaintiff has no cause of action because she had already used 12 weeks in 2006 and therefore was not entitled to an additional 12-week leave period in 2007.  Defendant asserts that under the FMLA, employers are not required to provide any more than 12 weeks of leave.

Defendant's position overlooks a key term of the statute.  The FMLA does not merely guarantee eligible employees 12 workweeks of leave, but rather "12 workweeks of leave *during any 12-month period*."  29 U.S.C. § 2612(a)(1)(emphasis added).  According to the Act's implementing regulations, employers have a number of options for measuring this one-year

period.  29 C.F.R. § 825.200(b)(2009).  Employers can measure the period forward from the date of the employee's first FMLA leave, or use a "rolling" 12-month period measured backward from the date an employee uses any FMLA leave, or designate any fixed 12-month period as the "leave year."  29 C.F.R. § 825.200(b)(2), (3) and (4).  Employers also can choose the simplest option, as defendant did in this case, which is to treat each calendar year as a new "12-month period."  29 C.F.R. § 825.200(b)(1).  As the Secretary has recognized, under this method, an employee could effectively be entitled to 24 consecutive weeks of FMLA leave by taking 12 weeks of leave at the end of the year and 12 weeks at the beginning of the following year.  29 C.F.R. § 825.200(c).  Thus, contrary to defendant's contention, Bender's determination that plaintiff was entitled to a new 12-week period of leave with the onset of the new calendar year in 2007 was entirely consistent with the FMLA and its regulations.

Contrary to defendant's argument, *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002), does not advance defendant's position.  In that case, the Supreme Court abrogated the categorical penalty found in 29 C.F.R. § 825.700(a) (2001), which provided that paid or unpaid leave taken by an employee did not count against the employee's FMLA entitlement if the employer did not designate the leave as FMLA leave.  The Court held that the regulation was inconsistent with the FMLA's remedial scheme insofar as it required an employer to grant additional leave beyond the 12 weeks guaranteed by the statute even if the employee was not harmed by her employer's failure to properly designate the leave.  *Ragsdale*, 535 U.S. at 90.  The Court did not hold, as defendant suggests, that an employer could *never* be required to provide leave beyond the statutory 12 weeks.  More to the point, nothing from the Court's opinion calls

into question the FMLA's guarantee of 12 weeks of leave in a given one-year period or the Secretary's determination that the one-year period may be measured by the calendar year.

Finally, it is of no relevance that plaintiff had no FMLA coverage from November 10, 2006 until her second leave period began in January 2007.  During that period, defendant did not permanently fill plaintiff's Health Care Quality Specialist position but continued to use a temporary employee to complete the functions of that position.  Further, defendant never notified plaintiff that she had lost that position or that it was demoting her to a new position.  Instead, after approving plaintiff for a new allotment of FMLA leave beginning January 2007, defendant reaffirmed its intent to restore plaintiff to the Health Care Quality Specialist position when she returned from leave.  Under the FMLA, an employer must restore the employee to the position she held "when the leave commenced."  29 U.S.C. § 2614(a)(A).  From the existing record, the only reasonable inference a jury could draw is that plaintiff still held the Health Care Quality Specialist position at the time plaintiff commenced her FMLA leave in 2007.

IV.  <u>Hours Worked</u>

Defendant next contends that plaintiff was not eligible for FMLA leave in 2007 because she did not meet the Act's hours-of-service requirement.  To be eligible for FMLA protection, an employee must have worked at least 1,250 hours during the 12-month period preceding the leave.  According to defendant's time records, plaintiff worked only 1,128 hours in 2006.  In response, plaintiff argues that 1) defendant should be bound by its own policy, which extends family leave to employees who have performed 1,000 service hours in the preceding year; 2) principles of equitable estoppel bar defendant from challenging her statutory eligibility; and 3)

defendant's time records are not dispositive because she often worked more than eight hours a day, putting her over the 1,250 requirement.

A.  Defendant's leave policy

As plaintiff points out, both the FMLA and its regulations specifically encourage employers to adopt leave policies more generous than the FMLA.  29 U.S.C. § 2653; 29 C.F.R. § 829.700(a) (2009) ("An employer must observe any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established by the FMLA.").  Nonetheless, I agree with those courts that have found that a plaintiff cannot maintain a cause of action under the FMLA for an employer's violation of its more-generous leave policy. *Dolese v. Office Depot, Inc.*, 231 F.3d 202, 203 (5th Cir. 2000); *Mahoney v. Ernst & Young LLP*, 487 F. Supp. 2d 780, 802 (S.D. Tex. 2006); *Covey v. Methodist Hospital of Dyersburg, Inc.*, 56 F. Supp. 2d 965, 971 -972 (W.D. Tenn. 1999); *Barron v. Runyon*, 11 F. Supp. 2d 676, 679 (E.D. Va. 1998); *Rich v. Delta Air Lines*, 921 F. Supp. 767, 773 (N.D. Ga.1996).  As the court explained in *Rich*, 921 F. Supp. at 773-74:

> The purpose of [29 C.F.R. § 825.700] is to ensure that the FMLA is not interpreted to abrogate any currently existing employee-benefit plan. Therefore, if an employer has a plan or program more generous than the FMLA, then the FMLA will not supersede or reduce those more generous benefits which the employer has chosen to provide.  In essence, the regulation is merely a truism which emphasizes that employers are legally bound by valid contractual agreements made with their employees regarding employment benefits.   An employer's contractual obligations are distinct, however, from the regulation at issue and the FMLA itself.

10

Plaintiff makes no effort to distinguish these cases or to develop this aspect of her claim in any meaningful manner.  Accordingly, I find that she cannot pursue an FMLA claim on the basis of defendant's internal leave policy.

B.  Equitable estoppel

Plaintiff next argues that even if she was not an "eligible" employee entitled to FMLA protection, defendant is equitably estopped from raising that defense because of Bender's representations to plaintiff that she *was* eligible.  Under federal law, a party may be estopped from pursuing a claim or defense where:  1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; 2) the other party reasonably relies upon that misrepresentation; and 3) the other party suffers a detriment as a result of his or her reliance.  *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59 (1984) (citing Restatement (Second) of Torts § 894 (1979)).

Although the Seventh Circuit has not considered directly whether equitable estoppel is available to defeat a defense of FMLA ineligibility, it has suggested that the doctrine could be applied "in an appropriate case."  *Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 582 (7th Cir. 2000).  *See also Peters v. Gilead Sciences, Inc.*, 533 F.3d 594 (7th Cir. 2008) (not necessary to decide whether equitable estoppel operated to bar employer from asserting ineligibility defense because plaintiff also brought state law claim for promissory estoppel).  Other circuits, as well as district courts in this circuit, have found that the doctrine applies to an FMLA claim brought by an employee whose employer misinformed her about her FMLA eligibility.  *Minard v. ITC Deltacom Commc'ns, Inc.*, 447 F.3d 352, 358 (5th Cir. 2006); *Duty v. Norton-Alcoa Proppants*, 293

F.3d 481, 493-94 (8th Cir. 2002); *Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 723-25 (2nd Cir. 2001); *Collins v. Midwest Medical Records Ass'n*, 2009 WL 606219, *12 (E.D. Wis. Mar. 9, 2009); *Murphy v. North American Lighting*, 540 F. Supp. 2d 1018, 1021-22 (C.D. Ill. 2008); *Sullivan v. Fort Wayne Foundry Corp.*, 2006 WL 1660590, at *6-7 (N.D. Ind. June 6, 2006).[2]

Defendant does not contest the availability of equitable estoppel in principle but contends that plaintiff cannot satisfy the doctrinal requirements.  Specifically, defendant contends that plaintiff has failed to adduce evidence from which a jury could conclude that she was harmed by Bender's representation concerning her eligibility for FMLA leave in 2007.

In *Ragsdale*, 535 U.S. at 90, the Court alluded to the showing an employee would have to make to bring an actionable claim of estoppel under the FMLA.  Wolverine had granted Ragsdale 30 weeks of leave related to cancer without notifying her that 12 of those weeks would count as her FMLA leave.  When she sought her seventh 30-day extension of leave, Wolverine denied her request, informing her that she had exhausted all the leave to which she was entitled under the company plan.  When she did not come back to work, she was terminated.  Ragsdale sued, contending that because Wolverine had not designated her leave as FMLA leave, none of it counted and she was entitled to an additional 12 weeks as guaranteed by the FMLA.  *Id*. at 85.  Plaintiff relied on language in 29 C.F.R. § 825.700(a) (2001), since withdrawn, that provided that any leave taken by the employee before the employer designated the leave as FMLA leave did not count against the employee's statutory entitlement.

---

[2]  The Secretary's recent amendments to the FMLA regulations, which went into effect January 16, 2009, appear to be in sync with these cases.  29 C.F.R. § 825.301(e) provides that if an employer responding to an FMLA leave request fails to properly inform the employee about her eligibility for FMLA leave and that failure causes the employee to suffer harm, then the employer's botched notice "may constitute an interference with, restraint of or denial of the exercise of an employee's FMLA rights."

The Court found that the regulation was invalid because it "worked an end run around important limitations of the statute's remedial scheme" by allowing an employee to maintain a cause of action absent a showing that she had suffered any real harm. *Id*. at 91. The Court noted that although it was conceivable that some employees would decide not to take any leave at all upon learning from their employer that their leave would count towards their FMLA leave, it was not fair of the Secretary to assume, as he had done in the regulation, "that this fact pattern will occur in any but the most exceptional of cases." *Id*. at 93. To illustrate, the Court pointed to the facts before it:

> Ragsdale has not shown that she would have taken less leave or intermittent leave if she had received the required notice. As the Court of Appeals noted-and Ragsdale did not dispute in her petition for certiorari-"Ragsdale's medical condition rendered her unable to work for substantially longer than the FMLA twelve-week period." In fact her physician did not clear her to work until December, long after her 30-week leave period had ended. Even if Wolverine had complied with the notice regulations, Ragsdale still would have taken the entire 30-week absence.

*Id*. at 90.

After *Ragsdale*, the focus of the inquiry in a failure-to-inform or estoppel case is "the reality of what would have happened had the notice been given, including whether or not the employee would have returned to work after taking leave." *Miller v. Personal-Touch of Virginia, Inc.*, 342 F. Supp. 2d 499, 515 (E.D. Va. 2004). When an employee fails to adduce evidence that she could have returned to work earlier or that she would have structured her leave differently had her employer properly informed her of her FMLA eligibility, the employer is entitled to summary judgment. *See, e.g., Tippens v. Airnet Systems, Inc.*, 2007 WL 1026954, *7 (S.D. Ohio 2007) (where undisputed evidence showed that plaintiff was "totally incapacitated"

13

and could not have returned to work when 12-week leave period expired, he could not show that he was harmed by defendant's failure to provide notice that leave was being counted as FMLA leave); *Miller*, 342 F. Supp. 2d at 515 (no triable issue of fact existed regarding whether defendant's alleged failed or delayed notice impaired plaintiff's FMLA rights where plaintiff was unable to return to work after 12 weeks and she presented no evidence that she would or could have structured her leave differently had she been aware of concurrent running of FMLA and paid leave); *Roberson v. Cendant Travel Services, Inc.*, 252 F. Supp. 2d 573, 577 (M.D. Tenn. 2002) (defendant entitled to summary judgment on plaintiff's interference claim based on defendant's failure to give notice because medical evidence was undisputed that plaintiff was unable to return to work); *see also Kosakow*, 275 F.3d at 725 (plaintiff's knowledge two months in advance of planned surgery and fact that she needed less than 50 hours to meet 1250 requirement were sufficient to permit jury to infer that plaintiff would have worked more hours before taking leave if employer had properly informed her of the hours requirement).

Plaintiff in this case has adduced no evidence from which a reasonable jury could infer that she would have done things differently had she not been misinformed about her FMLA eligibility.  She presents no evidence that she would have worked more in 2006 to ensure that she met the hours requirement.  By all indications, she could not have:  plaintiff went on leave shortly after requesting it upon the advice of her doctor and remained on medical leave throughout the remainder of her pregnancy leave.  Her child was born on November 30, 2006. Plaintiff does not assert that she would have or could have returned to work in December 2006. Plaintiff does not assert that she would have or could have returned from leave sooner had she known her 2007 period of leave was not FMLA-protected.  In fact, plaintiff's doctor did not

14

release her to return to work until March 19, 2007. All plaintiff offers as evidence of harm is

the fact that defendant refused to reinstate her to her former position or one comparable when

she returned from leave on March 19, 2007. However, a party suffers no adverse change in

status merely by losing a benefit she never should have received in the first place. *Heckler*, 467

U.S. at 61-62. Accordingly, defendant is not estopped from arguing that plaintiff was not an

eligible employee under the FMLA.


C.  Actual hours worked

Finally, plaintiff disputes defendant's contention that she did not meet the FMLA's hours

of service requirement. The right of family leave is conferred only upon employees who have

worked at least 1,250 hours in the previous 12 months. This is a bright line requirement with

no "close enough" exception. *Pirant v. United States Postal Service*, 542 F.3d 202, 206 (7th Cir.

2008) (plaintiff who fell short of 1,250 hours by between .2 and 1.2 hours not eligible employee

under FMLA). The FMLA provides that the determination of whether the hours-of-service

requirement for leave eligibility has been met is governed by the legal standards of the Fair Labor

Standards Act ("FLSA"). 29 U.S.C. § 2611(2)(C) (cross-referencing 29 U.S.C. § 207).

Defendant's time records show that plaintiff worked only 1,128 hours in 2006, a shortfall

of 122 hours. Even so, plaintiff argues that these records are not dispositive because they do not

reflect overtime hours. *See* 29 C.F.R. §§ 785.11, 785.12 (work not requested but suffered or

permitted is work time, even if performed after regular work hours or away from job premises).

Plaintiff avers that she regularly put in an extra four to five hours weekly beyond her standard

40-hour work schedule, in addition to working through her half-hour lunch period and her 15-

minute morning and afternoon breaks.  Plaintiff contends that when these additional hours are included, she more than covers the 122-hour shortfall needed to meet the FMLA's service hours requirement.

Defendant responds that plaintiff's calculations do not account for numerous unrecorded absences that plaintiff took to go to medical appointments or home during the workday to deal with symptoms of morning sickness.  Defendant contends that even if one accepts as true plaintiff's statements regarding the number of extra hours she put in *and* the amount of undocumented time for which she missed work for medical reasons, plaintiff's total hours come up to only 1,233, seventeen short of what she needs to establish FMLA eligibility.

So there are two material factual disputes.  First, defendant's calculations do not contain the extra one hour per day that plaintiff swears she consistently spent working through her lunch hour and break periods, which would add 165 hours to her total.  If plaintiff actually performed activities "predominantly for the benefit of the employer" during these breaks, then the time would count as a compensable service hour.  *Alexander v. City of Chicago*, 994 F.2d 333, 337 (7th Cir. 1993) (FLSA case).

Second, the parties also dispute how long it would have taken plaintiff to drive home and back on the days she left work because of morning sickness:  defendant estimates 20 minutes, but plaintiff avers that it was only 10 minutes.  If plaintiff's estimate is more accurate for each trip, and if we keep all of defendant's other assumptions the same, then plaintiff picks up 21 hours, enough to cover defendant's calculation of a  17-hour shortfall.

Determining the accuracy of each side's assertions about time added, time subtracted and the total that results requires the resolution of disputed material facts, a task reserved to the jury. Accordingly, I must deny defendant's motion for summary judgment on plaintiff's FMLA claim.

## V.  Counterclaim

Defendant has sued plaintiff under common law theories of mistake and unjust enrichment to recover approximately $2,900 in gross wages that it mistakenly paid plaintiff in 2006 for hours that she did not work.  Plaintiff does not dispute that she was overpaid but contends that she should not have to reimburse defendant for payroll deductions, namely state and federal income tax withholding and FICA taxes, that defendant made on her behalf.  In addition, she asserts that she has already reimbursed defendant for her share of the employment benefits contributions that was paid by defendant.

I agree with plaintiff that she need not pay defendant twice for her share of employment benefits.  However, I agree with defendant that plaintiff must reimburse it for the income taxes it withheld for plaintiff's benefit.  As a practical matter, plaintiff can recover the overpaid tax by amending her 2006 tax returns, whereas defendant lacks the means to recover the sums.  For efficiency's sake, I am directing defendant to provide plaintiff with any documentation in defendant's possession that plaintiff  needs to file an amended tax return should she choose to do so.

As for FICA taxes, defendant makes no suggestion that plaintiff has the ability to recover these amounts.  Accordingly, I will not order plaintiff to reimburse defendant for this line item.

ORDER

IT IS ORDERED THAT:

1.  The motion of defendant Unity Health Plans Insurance Corporation for summary judgment on plaintiff Deanna Weidner's claim under the Family and Medical Leave Act is DENIED.  A genuine dispute of fact exists concerning whether plaintiff performed the minimum service hours required to be eligible for a period of leave in 2007 under the Act.

2.  Defendant's motion for summary judgment on its counterclaim to recover overpaid wages is GRANTED IN PART and DENIED IN  PART.  Plaintiff is ordered to reimburse defendant in the amount of $2,900.49, less any amount paid by defendant for FICA taxes and less any amount already paid by plaintiff to defendant for her share of employment benefits.

Entered this 6th day of April, 2009.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge

18